## William N. Brown v. Archibald W. McCormick.

*Deed: Record: Subscribing witness: Affixing a mark.* An objection to the record of a deed that one of the subscribing witnesses has signed by affixing his mark, and that this is not a compliance with the statute regulating the execution of deeds, is not tenable; this objection is well answered by the general statute of construction (*Comp. L.*, § *2*, *Sub. 17*), providing that, "in all cases where the written signature of any person is required by law, it shall always be the proper handwriting of such person; or, in case he is unable to write, his proper mark."

*Acknowledgment: Certificate.* A certificate of acknowledgment which, after naming the grantor, reads, "to me known to be the same person," etc., is not open to the objection that it fails to show that the grantor was personally known to the officer.

*Justice of the peace: Acknowledgment.* A justice of the peace of one county has no authority to take an acknowledgment in another county.

*Deed: Acknowledgment: Statute construed.* Where the original deed is produced in evidence and it is a good common-law conveyance, it will operate to prove a transfer of the title as between the parties, and as against all others rightly chargeable with notice, even though the acknowledgment be lacking; the general statute regulating alienation by deed (*Comp. L.*, *ch. 150*), clearly implies that the acknowledgment is not one of the constituent parts of the conveyance itself.

*Record: Defective deed: Notice.* The record of a deed with a defective acknowledgment is not evidence of the original instrument, but under the curative act of 1861 (*Sess. L.*, *1861, p. 16*) such record operates as a notice of the rights secured by the deed, where the instrument was made in good faith and on valuable consideration, and intended to operate as a conveyance.

*Repeals by implication.* This act of 1861 was not repealed by the act of 1867 (*Sess. L.*, *1867, p. 139*) adding new sections to the general chapter on alienation by deed. Repeals by implication are not favored.

*Heard October 17. Decided October 28.*

Error to Isabella Circuit.

*L. T. Durand,* for plaintiff in error.

*C. H. Gage,* for defendant in error.

GRAVES, J.

This was trover by the plaintiff in error for the value
of pine timber taken from the southwest quarter of the
southeast quarter of section twenty-one, in township four-
teen north, of range five west, in the county of Isabella.
The cause was tried before a jury, who, by direction of the
court, found for the defendant, and the plaintiff brought
error.

Unless it appears by the record that the plaintiff made
a case which he was entitled to have investigated by the
jury the judgment must be affirmed.    The land was wild
and unoccupied, and his right to the timber was made to
turn upon his legal ownership of the land, and that again
depended upon the effect due to certain deeds and the
records made of them.    Both parties claimed title to the
land under deeds from the patentee, an Indian named Away-
way-shing, and there is no question but that these conflict-
ing deeds were made respectively for valuable consideration.
Neither is there any dispute upon the fact that the defend-
ant, and his grantor, who was the immediate purchaser
from the patentee, were both purchasers for valuable con-
sideration and in good faith.    The plaintiff proved by the
record of deeds that the patentee deeded to him on the
29th of January, 1872, and that the deed was put on record
the first day of February following.

The defendant gave in evidence an original deed from the
patentee to Thomas Buckley earlier in date than that to
the plaintiff, since it bore date on the 13th of September,
1871.    The defendant also gave in evidence a second orig-
inal deed between the same parties, dated February 7th,
1872, and, as will be noticed, subsequent in date to that
given to the plaintiff.    He also submitted in evidence a
quit-claim deed for the timber, given by Thomas Buckley
to himself on the 8th of February, 1872.    The first deed
to Buckley was placed on record before the plaintiff's deed
was given, namely, on the 16th of September, 1871.    The

second deed to Buckley was placed on record afterwards. If as between these parties the first deed to Buckley, and the record of it, were sufficient to convey the title to Buckley and preclude the plaintiff from founding any right to the land on his deed, made and recorded subsequent to the record of such first deed to Buckley, then the plaintiff was not entitled to recover, and the verdict was correct.    But the plaintiff has raised several questions relating to the sufficiency of the execution of the deed, the acknowledgment, the registry, and the effect due to the actual registry.    One of the witnesses to this deed was unable to write, and his name was written out by the other witness, and he then affixed his mark.    It is now argued that this was not a compliance with the statute which regulates the mode in which deeds are to be witnessed.    The plaintiff insists that the language and spirit of the provision indicate that the witness must actually subscribe his own name.

This objection, however, is deemed to be well answered by the general statute of construction, which declares that in construing statutes, except when inconsistent with the manifest intent of the legislature, the written signature of any person, whenever required, shall always be the proper hand-writing of such person, *or in case he is unable to write, his proper mark.—Comp. L.,* § 2, sub. 17.    Therefore, if apart from this provision it would be right to interpret the statute relating to subscribing witnesses in such a way as to render all persons who cannot write incompetent witnesses to deeds, we think this law precludes all question on the subject.

It was objected to the record that the certificate of acknowledgment did not show that the grantor was personally known to the officer.    The certificate was as follows:

"STATE OF MICHIGAN, } ss.
    COUNTY OF BAY, }

    "On this thirteenth day of September, in the year one thousand eight hundred and seventy-one, before me, a jus-

tice of the peace in and for said county, personally appeared Louis Away-way-shing, *to me known to be the same person described* in, and who executed the within instrument, who acknowledged the same to be his free act and deed.

                    "PHILLIP GRUETT,
                    "*Justice of the Peace.*"

We think this objection untenable. The certificate upon its face clearly implied that the grantor was personally known to the justice. It was supposed that an intimation in *Buell v. Irwin, 24 Mich., 145,* favored the objection here taken. The expression noticed was an incidental one in the opinion, and was not made as conveying the view held by the court on the point, and however it may be considered, as a correct indication or otherwise, in respect to the state of things to which it had reference, it has no application here. There the question arose upon an instrument claimed to be a certificate of acknowledgment of a Michigan commissioner in another state, and as on its face the instrument appeared to be unauthenticated by seal, and hence without any force as a certificate, the suggestion was made that possibly it ought not to be considered as sufficiently showing that the grantor in the deed was personally known to the commissioner.

The point of the objection here is not that the supposed certificate was, upon its face, wanting in something to stamp it as a certificate, but it is upon the construction due to it if considered as a certificate; whether in truth the terms used import that the grantor was personally known to the justice.

In the course of the defendants proofs it turned out that the justice who took the acknowledgment was not a justice of the peace of Bay county at the time, but was a justice of the peace of Isabella county, and that he went into Bay county and there took the acknowledgment.

Some objections were taken to the admission of evidence that Mr. Gruett was a justice of the peace of Isabella county, but as the court ultimately ruled, and as we think

correctly, that Mr. Gruett, as a justice of the peace of Isabella county, was not authorized to go into Bay county, and there take the acknowledgment, and as the case must rest upon other considerations, we do not pass upon those objections.

The original deed was proved and given in evidence, and admitting that the acknowledgment was bad, still the deed itself was a good common-law conveyance as between the parties to it, and as against all others rightly chargeable with notice.

The general statute which regulates alienation by deed, very clearly implies that the acknowledgment is not one of the constituent facts of the conveyance proper. Among other things it authorizes, as a proper preliminary to registry, a proceeding in court to obtain a judicial authentication, where a resident grantor refuses to acknowledge his deed. And we cannot suppose that the legislature would have sanctioned in this way the authentication of an unacknowledged deed, a deed the grantor himself would not acknowledge, so as to fit it for record and adapt it to operate every way as a perfect and complete conveyance, if it had been considered that acknowledgment was an attribute of the contract of conveyance, and without which there would be no transit of the title as between the parties. To suppose so would be to assume that the legislature meant to expressly authorize an act they considered as part of the contract of conveyance, and which could proceed only from the will of the grantor, to be performed by an independent agency, and against the will of the grantor.

Considering the deed as a good conveyance between the parties to it, and as made in good faith and on a valuable consideration, but defective in the statutory requisite of acknowledgment, and bearing in mind that it was made and actually placed on record before the plaintiff's deed, the remaining question concerns the effect, if any, of this registry upon the plaintiff's rights. By the last clause of the 4th section of the curative act of 1861 (*Sess. L. 1861,*

*p. 16*), it is provided that when an instrument made in good faith and on valuable consideration, and intended to operate as a conveyance, is placed on record in the county where the lands lie, and the paper has a defect in some statutory requisite in the acknowledgment or certificate of acknowledgment, the record shall operate as legal notice of all the rights secured by the instrument. While this law, we think, would not make the record of the defective instrument any evidence of the original paper, but would leave such original paper to be proved by independent and satisfactory evidence, we think it was meant to make the record operate so far as to convey legal notice of the rights secured by the original paper.

As already stated, the first original deed to Buckley was given in evidence with proof that it was in good faith and on valuable consideration, and if this statute was in force when the plaintiff took his deed, it seems unquestionable that this record was legal notice of all the rights secured by the deed to Buckley, or in other words, of the rights acquired by Buckley as grantee in a good common-law conveyance made by the patentee. And if this were true, the effect of it would be to invalidate the plaintiff's title. But the plaintiff contends that this provision of the curative act was impliedly repealed by a section added to the general chapter relating to alienation by deed, in 1867.—*Comp. L.,* § *4249.* The act of 1867 amended one section and added three to the general chapter just mentioned; but it did not profess in direct terms to exclude the operation of the curative act of 1861. The title contains no indication of a purpose to repeal the law of 1861, and we see no such inconsistency between the two statutes as to feel warranted in saying that they may not stand together. Repeals by implication are not favored, and there is certainly much room for both of these statutes to operate without conflict. Both were designed to guard and secure rights; not to impair or destroy them. And the grounds of policy for the law of 1861, as one to operate in future, were as evident in 1867 as in 1861, and

when the legislature required registers to abstain from recording defective papers, they were well aware that such papers after all would sometimes get on record, and that important interests might be sacrificed unless some effect should be given to such records. Accepting this true and practical view of the matter, they allowed the act of 1861 to remain, but endeavored by the act of 1867 to lessen the occasions for its application.

Having reached the conclusion that the act of 1861 was in force, and that under the fourth section the record of the first deed to Buckley was legal notice to the plaintiff when he took his deed, it follows that he obtained no title on which to base a recovery, and that the judgment of the court below was right, and should be affirmed, with costs.

The other Justices concurred.