Pringle vs. Dunn and others.

PRINGLE VS. DUNN and others.

PRESUMPTION. (1) *That deed was properly executed, it so appearing, must be fully overcome by those attacking.*

RECORDING ACT: NOTICE BY RECORD. (2) *Deed must be legally recordable, or is not constructive.* (3) *If recordable, entry in index, notice.* (4) *Discrepancies in entry supplied by record, and* vice versa. (5) *Defects in record, not supplied by entry, if essentials to recordability, destroy it as constructive notice.* (6) *Deed not witnessed, not recordable.* (7) *If recorded, not constructive notice.*

SUBSEQUENT PURCHASER: ACTUAL NOTICE. (8) *What is.* (9) *Grantee charged with notice of recitals in his deeds.* (10) *One knowing by report, chargeable with.* (11) *Grantee chargeable of grantor, not chargeable, protected.*

PLEADING. (12, 13) *Effect of allegation as to interest subject to mortgage. Presumption as to source of title.*

PRINCIPAL AND AGENT. (14, 15) *Notice to agent, to bind principal, must be during agency.*

1. Where a deed, when offered in evidence, appears to be duly attested and acknowledged, the *presumption* is that it was attested *at the time of its execution;* and this presumption can be overcome only by clear and satisfactory evidence to the contrary, such as is required for the reformation or rescission of a deed or other instrument on the ground of mistake. The proof that plaintiff's deed here in question was not witnessed at the time of its execution, is *held* insufficient.

2. A deed must be legally recordable to make the record thereof constructive notice.

3. Where a recordable deed has been left at the register's office for record, and has been entered upon the general index in the manner required by law, it is to be "considered as recorded" at the "time of reception," duly noted in such index (R. S., ch. 13, sec. 143); and such en-

37  449
78  524
37  449
80  221
37  449
90  82
37  449
93  516
37  449
94  175
37  449
99  623

Pringle vs. Dunn and others.

try operates as constructive notice of all the facts contained therein, and also of the contents of the deed itself until it is recorded *in extenso*.

4. Where there is a discrepancy between the index entries (made in due form) and the instrument as recorded *in extenso*, each supplies the defects of the other in the constructive notice thereby given.

5. But where the deed, *as recorded at length*, appears defective in some parts which are *not supplied* by the index entries, and without which it would not be legally recordable, there is no constructive notice; and this though the original instrument is in every respect perfect and entitled to record.

6. Under our statute a deed must be *attested by two witnesses,* to render it recordable; but the fact that it is so witnessed is not required to be noted in the general index.

7. Where, therefore, a mistake was made in recording a mortgage *in extenso*, by omitting to copy the attestation thereof: *Held*, that the registry was not constructive notice to subsequent mortgagees for value.

8. This action being upon a mortgage made to a railroad company and defectively recorded, it appears that one of the defendants, when he subsequently purchased a part of the mortgaged premises, " had heard that there was a defective railroad mortgage upon them, but did not look for it, because his abstract did not show it." *Held*, that he must be regarded as having had *actual notice* of plaintiff's mortgage.

9. A grantee of land is chargeable with notice of facts recited in a deed which constitutes a necessary part of his chain of title.

10. One who " knew by report," when he purchased land, that there was a mortgage upon it, is chargeable with notice of such mortgage, if a valid one, although the report also stated that such mortgage was void.

11. A person chargeable with notice of a prior deed is protected if he purchase from one not so chargeable; and one who takes without notice is protected although his grantor took with notice.

12. Where persons are made defendants to a mortgage foreclosure under a general allegation that they " claim some interest in or title to the mortgaged premises, which is subject to " the plaintiff's mortgage, this implies that their interest or title and that of the plaintiff are derived from a common source.

13. Where, therefore, such a defendant shows that he derived his title from one X., and that X. acquired title without notice, actual or constructive, of plaintiff's mortgage, it will be presumed, in the absence of allegation or proof to the contrary, that the title of X. was derived from plaintiff's mortgagor.

14. Notice to an agent, to bind the principal, must be brought home to the agent while engaged in the business and negotiation of the principal, and when it would be a breach of trust in the former not to communicate the knowledge to the latter.

15. A defendant in this case, who was aided by her husband in purchasing a part of the premises covered by plaintiff's prior mortgage, *held* not chargeable with knowledge of the existence of such mortgage, on the ground that her husband knew of it at the time of such purchase: (1) Because it does not appear that he acted *as her agent*, in a legal sense, in making the purchase; and, (2) Because, if he did, his knowledge, *acquired at another time*, cannot be imputed to her.

APPEAL from the Circuit Court for *Milwaukee* County.

Action commenced in Columbia county, August 24, 1863, to foreclose a mortgage alleged to have been executed by the defendants, *Andrew Dunn* and wife, to the La Crosse & Milwaukee Railroad Company upon the northeast quarter of the southeast quarter of section six, township twelve north, of range nine east, in Columbia county, to secure one of the bonds of said company for $5,000 payable Jan. 1, 1864; said mortgage bearing date April 11, 1854, and alleged to have been recorded on that day in the office of the register of deeds for Columbia county. The plaintiff claimed to hold the bond and mortgage as a *bona fide* purchaser for value before due. The assignment to him was not of record. The action was originally brought against the *Dunns*, the La Crosse & Milwaukee Railroad Company and Hans Crocker, its receiver. Numerous other defendants were afterwards brought in by amendment, and among them the *Milwaukee & St. Paul Railway Company*, *Thomas Maloy*, *Stanislaus Bartosz*, and *Felix McLindon*. The complaint, as amended, contained as against all the defendants, except the *Dunns*, the allegation, that they had, or claimed, some interest in, or title to the mortgaged premises which, if any, was subsequent and subject to the mortgage of the plaintiff.

The *Milwaukee & St. Paul Railway* answered and, among other things, denied specially that the plaintiff's mortgage was,

at or before the time of recording, witnessed so as to entitle it to record, and alleged that the record of the same has and shows *no subscribing* witnesses' names thereon, and that the said company had since in good faith purchased a portion of the premises covered by said mortgage without any *actual* knowledge of the plaintiff's mortgage. It appeared that the quarter quarter section embraced in the mortgage had subsequently been platted as an addition to the city of Portage, and the various lots thereof conveyed to divers parties, who were made defendants. The mortgagor *Dunn* died before suit brought.

Venue was changed to Milwaukee county. The testimony as to the witnessing and recording of the plaintiff's mortgage, on which action was brought, was voluminous and conflicting, but substantially as follows : The plaintiff offered in evidence the mortgage which purported to have been signed by *Andrew Dunn* and *Sarah J. Dunn* as mortgagors and by H. C. Baker and A. J. McFarlane, as subscribing witnesses, and acknowledged before Harvey C. Baker, as notary public. The defendant offered in evidence a certified copy of the record of said mortgage, certified by the register of deeds of Columbia county, which shows the mortgage the same as the original, except that there are no witnesses' names in the record. The original record was also offered showing the same discrepancy. The deposition of Wm. Owen was read, who testified that he was the register of deeds of Columbia county, at the time the mortgage was recorded; that he signed the certificate indorsed thereon ; that after the recording he compared the mortgage with the record, assisted by one P. M. Johnson, he holding the mortgage and comparing, while Johnson read the record ; that the record was written by Johnson, who was at the time in the employ of the La Crosse & Milwaukee Company ; that the company were desirous of having their farm mortgages speedily recorded, and made an arrangement with the register whereby the copying of the deeds into the records was done by Johnson,

and the register thereafter compared with him and certified to the record.   The witness was confident he had compared this mortgage by the mark " ex." made at the foot of the page, which was, as he was positive, in his own hand writing ; that at the time of the comparing there were no names of subscribing witnesses on the deed ; that, as he thought, the fact was mentioned at the time, and that Johnson said he would go and have witnesses' names subscribed to the mortgage.   Hugh Mc-Farlane testified that he was father of A. J. McFarlane, whose name was upon the mortgage as witness ; that A. J. McFarlane was dead ; that he knew his hand writing and was positive the signature upon the mortgage was not his son's handwriting ; that the son was 14 or 15 years old at the date of the mortgage. Four other witnesses testified to knowledge of A. J. McFarlane's hand writing, and that they thought the signature upon the mortgage was not his.

The plaintiff, as rebutting evidence, produced P. M. Johnson, who testified that he recorded the mortgage ; that he could not recollect whether the witnesses' names were upon the original mortgage at the time of recording ; that it was his special business at the time to see that the mortgages were properly executed, and, if they had been wanting, he thought it hardly possible that the fact would have escaped his notice ; that the record was made hastily, and the omission of the names in the record was probably an oversight on his part; that this was more likely than that he should have suffered the deed to pass through his hands incompletely executed.   The plaintiff also offered in evidence the original general index from the office of the register of deeds of Columbia county and read therefrom the entry of the reception and record of said mortgage in form and manner as prescribed by section 123, ch. 10, R. S., 1849.   The plaintiff also introduced as a witness Harvey C. Baker, who testified that both the grantors in the mortgage signed and acknowledged the same before him as notary, and that he subscribed the same as a witness at the time ; that A. J. McFar-

lane went with him to the house of *Andrew Dunn* to obtain the signature and acknowledgment of *Mrs. Dunn;* could not positively remember as to McFarlane's signing, but his best recollection was, that he was present and witnessed the signing of the mortgage; did not know young McFarlane's handwriting. Witness's recollection in regard to the circumstances was quite indistinct. He was contradicted, as to conversations held with A. B. Alden, who was introduced by defendants and testified that Baker had admitted to him that one of the mortgages given by *Dunn* had been returned to him by Johnson to have witnesses procured. Some evidence was introduced tending to impeach his reputation for truth and veracity. *Mrs. Sarah J. Dunn* testified that she had no recollection of signing and acknowledging the mortgage, or of Baker and McFarlane coming to the house, as Baker had testified.

*Thomas Maloy,* one of the defendants, admitted in his deposition that he had heard at the time he purchased his lots, that there was a defective railroad mortgage said to be upon the lots, but which was reputed to be good for nothing; that *Mary Maloy,* his wife, also owned a lot purchased after the mortgage; that he was present at the purchase and did the business for her; that he had previously heard that there was such defective mortgage. There was no evidence that she had heard of, or had any notice of its existence.

*Felix McLindon,* one of the defendants, admitted in his deposition that he "knew by report that there was a railroad mortgage on the place at the time he bought two of the lots covered by the mortgage in suit.

*Stanislaus Bartosz,* a defendant, who owned and lived on several of the lots, testified that he had no actual knowledge of the mortgage; but it appeared in evidence that his grantor, Simon Bartosz, had purchased from H. W. Tenney, one of the parties who had platted the forty acres embraced in the mortgage in suit, and that Tenney's deed to Simon Bartosz contained the clause: "said premises are free and clear from all incum-

brances, except a mortgage to the La Crosse Railroad Company, which I am to save said Bartosz harmless from."

The court below found that the mortgage was not subscribed by Baker and McFarlane as witnesses at the time of the execution thereof, and not until after the recording thereof, but was so subscribed afterwards, but was not again recorded; that the plaintiff purchased the bond and mortgage in regular course of business, and was the owner and holder thereof; that none of the defendants had actual notice of the mortgage, and that the record thereof, before the same was witnessed, was not constructive notice of the mortgage; and that the defendants are entitled to judgment that the complaint be dismissed.

To these findings the plaintiff excepted, and appealed from the judgment.

*Mariner, Smith & Ordway,* for appellant, commented on the facts at length, insisting that they established the due execution and witnessing of the plaintiff's mortgage before it was recorded, and argued fully the question as to the claim of the *Milwaukee & St. Paul Company,* that its title was perfect and discharged of the lien of the plaintiff's mortgage. This branch of the argument is fully presented in the following case of *Aiken v. The Milwaukee & St. Paul R. R. Co.,* and, not being considered in the opinion, is omitted here. Insisting that the evidence showed that the mortgage in suit was duly witnessed and recorded, they further argued that the finding of the court below was certainly erroneous as to the defendant *Bartosz,* who is proved to have had actual notice of the existence of the mortgage, as it was recited in his grantor's deed from Tenney. A purchaser is bound to take notice of whatever appears in his chain of title. 1 Story's Eq. Jur., § 400; *Norris v. Hill,* 1 Manning's Mich., 205; *Fitzhugh v. Barnard,* 12 id., 111; *Case v. Erwin,* 18 id., 444; *Baker v. Mather,* 25 id., 51; *Dexter v. Harris,* 2 Mason, 531; *Lord v. Doyle,* 1 Clifford, 453; *Acer v. Westcott,* 46 N. Y., 384; *Gilbert v. Peteler,* 38 id., 165; *Howard Ins. Co. v. Halsey,* 4 Seld., 271; *Reeder v. Barr,* 4 Ohio, 446.

As to defendants, *Maloy* and *McLindon*, counsel claimed that they had sufficient notice to put them on inquiry, and, though they did not inquire, should be held to actual knowledge. The mortgage, though not witnessed or recorded, was good between the parties and others having actual knowledge of it. Ter. Stats., 179, §§ 9, 10; 172, § 6; R. S., 1849, 326, §§ 1, 8; and 388, § 6; *McMahon v. McGraw*, 26 Wis., 614; *Gilbert v. Jess*, 31 id., 110. The other parts of their argument are omitted.

*Guy C. Prentiss*, for respondents, *Maloy, McLindon* and *Bartosz*, presented the following points: 1. The pretended mortgage never became a mortgage at all under the statute. R. S. 1849, ch. 59, sec. 8. Not being executed in the presence of two witnesses, the mortgage is void as against the grantor. *Clark v. Graham*, 6 Wheat., 577; *Stone v. Ackley*, 13 N. H., 38; *Smith v. Chamberlain*, 2 id., 440; *French v. French*, 3 id., 234; *Patterson v. Pease*, 5 Ohio, 190; *Richardson v. Bates*, 8 Ohio St., 261; *Johnson's Lessee v. Haines*, 2 Ohio, 278; *Merwin v. Camp*, 3 Conn., 35; *Coit v. Starkweather*, 8 id., 289; *Winsted Savings Bank v. Spencer*, 26 id., 195; *Isham v. Iron Co.*, 19 Vt., 230; 4 Kent Com., 7 ed., 504; 2 Washburn on Easements, 2 ed., 597; *Craig v. Pierson*, 1 Cheves Law & Eq. (S. C.), 272; *Allen v. Thompson*, id. It follows that the plaintiff can never establish any rights to the land without proving notice to the defendants of this mortgage as he presented it in court. *Hinchcliff v. Hinman*, 18 Wis., 130. 3. The law, as settled in *Ely v. Wilcox*, 20 Wis., 523, decides that until a deed is fully executed and properly acknowledged, it is not entitled to record, and the improper record thereof is not constructive notice of any interest in the property. Counsel distinguished this case from *Shove v. Larson*, 22 Wis., 142; *Hay v. Hill*, 24 id., 235; *International Life Ins. Co. v. Scales*, 27 id., 640. By the rule in *Hoyt v. Jones*, 31 id., 389, and *Ehle v. Brown*, id., 405, the plaintiffs can have no pretense of title as against the lot owners and purchasers. 4. The covenant against a mortgage in the deed from Tenney to Simon Bartosz is no evidence of a mort-

gage, nor notice to his grantee of the existence of a mortgage, *Jackson v. Davis*, 18 Johns., 7 ; and *Stanislaus Bartosz* was therefore an innocent purchaser for a valuable consideration. *McLindon* states that he had heard that there was a *void* mortgage on the property, which is not notice. 5. The record of a deed is not constructive notice of its *existence or contents*, unless all the prerequisites prescribed by law in respect to its registration have been complied with ; nor would it be notice, if the deed was on record in any way not authorized by law. The registry of a defective deed is no notice of title to any one. 2 Washburn on Real Property, 625, sec. 54 ; *Ely v. Wilcox*, 20 Wis., 523 ; *Maul v. Rider*, 59 Penn. St., 167 ; *Isham v. Bennington Iron Co.*, 19 Vt., 245 ; *Harper v. Barsh*, 10 Rich Eq., 149 ; *Meighen v. Strong*, 6 Minn., 177. A purchaser is protected or is· not affected only by such actual notice as would amount to a fraud. 1 Story Eq. Jur., § 404 ; *Beekman v. Frost*, 1 Johns. Ch., 288 ; *S. C.*, 18 Johns., 544 ; *Astor v. Wells*, 4 Wheat., 466 ; *Farmers' L. & T. Co. v. Maltby*, 8 Paige, 361 ; *Stevens v. Hampton*, 46 Mo., 404 ; *Bishop v. Schneider*, id., 472 ; *Wood v. Cochrane*, 39 Vt., 544,; *Racouillat v. Sansevain*, 32 Cal., 376 ; *Racouillat v. Rene*, id., 450 ; *Tisher v. Beckwith*, 30 Wis., 55. 6. Prior record governs and holds as against subsequently recorded conveyances. *Ely v. Wilcox*, 20 Wis., 523 ; R. S., ch. 86, sec. 25 ; *Day v. Clark*, 25 Vt., 402 ; *Fallass v. Pierce*, 30 Wis., 443 ; *Hoyt v. Jones*, 31 id., 389 ; *Ehle v. Brown*, id., 405.

*J. P. C. Cottrill*, for same respondents, to same points, cited, also, *Mehaffy's Appeal*, 7 Watts & S., 200 ; *Sheppard v. Buckhalter*, 13 Ga., 444 ; *Brown v. Kirkham*, 1 Ohio St., 116 ; *Sawyer v. Adams*, 8 Vt., 172 ; *Stewart v. McSweeney*, 14 Wis., 468 ; *Trull v. Fuller*, 28 Me., 545 ; *Knowlton v. Walker*, 13 Wis., 275 ; *James v. Morey*, 2 Cow., 246 ; *White v. Moore*, 1 Paige, 551 ; *Jackson v. Van Valkenburg*, 8 Cow., 260. He also argued that the plaintiff was not aided by the entry in the index. The register had no more right to make the entry than to record.

A subsequent purchaser would not be bound to take notice of the index and ignore the full record. The fact shown to exist by the record overcomes the false assertion as to the fact in the index. The mortgage was void for want of witnesses. The cases of *McMahon v. McGraw*, 26 Wis., 614; *Quincy v. Denney*, 18 id., 480; *Myrick v. McMillan*, 13 id., 188, are cases of defective acknowledgment, or want thereof; not want of witnesses. There is no proof that there was ever any subscribing witness to *Andrew Dunn's* signature but Baker, and, therefore, it was never entitled to record upon that ground alone.

*John W. Cary*, for the respondent, the *Milwaukee & St. Paul Railway Company*, presented the same points as are fully given in his brief in the case of *Aiken v. The Milwaukee & St. Paul Railway Company* and others, *post*, 469, and directed his argument principally to the proposition that the defendant, represented by him, having derived its title under a trust deed executed by the La Crosse & Milwaukee Company, after the mortgage, without notice of the plaintiff's claim, either actual or constructive, was a subsequent purchaser in good faith within the meaning of the recording act.

COLE, J. Before approaching the legal questions involved in this case, it is necessary to determine a question of fact. And that is, Does the evidence show that the mortgage sought to be foreclosed was properly attested when first left at the office of the register, so as to entitle it to record? There is considerable testimony in the case which tends strongly to prove that the mortgage had no witnesses when it was recorded. And the court found as a fact that the mortgage was not subscribed by the witnesses, Baker and McFarlane, at the time of its execution and before it was transcribed upon the records and entered in the general index, but was subscribed by these witnesses after it was recorded, and that it was not again recorded. This finding affirms one important fact which is much contested by the defendants, which is, the genuineness of the

signature of the witness A. J. McFarlane to the instrument.
An attempt was made to prove, and it is argued that the evi-
dence shows, that McFarlane never signed the mortgage as a
witness, and that his signature thereto is a forgery.   On this
point we will only make the remark, that we are satisfied from
the evidence, and especially by an inspection of the writings
themselves, of the authenticity of the signature.   Whether the
mortgage was subscribed by the witnesses at the time of its
execution, and, before it was left at the office for registry, is a
question of more doubt, upon the evidence.   The testimony is
quite strong and positive, that the mortgage had no subscribing
witnesses when it was recorded.   But this testimony is contra-
dicted; and, considering the circumstances attending the exe-
cution and delivery of the mortgage, we think the probabilities
favor the inference that the instrument was witnessed when it
was left for record.   According to this view, there was a mis-
take in transcribing the mortgage upon the record, by omitting
the names of the witnesses.   The weight of the evidence to
our minds supports this inference or conclusion.   It is to be
observed that the mortgage is perfect and fair on its face, show-
ing two witnesses.   A strong presumption fairly arises from
the instrument itself, that it was witnessed at the time of its
execution.   This presumption is not overcome nor repelled by
the testimony offered to show that it was not witnessed at that
time.   In respect to the degree or quantity of evidence neces-
sary to justify a finding that the subscribing witnesses signed
the instrument after it was executed and recorded, the case
would seem to come within the rule laid down in *Kercheval v.
Doty*, 31 Wis., 478, where it is said:   "The proposition being
to set aside or invalidate a written contract by evidence of a far
less certain and reliable character than the writing itself, the
greatest clearness and certainty of proof should be required.
It is like the cases where the object is to correct or reform a
deed or other instrument on the ground of mistake, or to set
aside or rescind it on the same ground; where the rule is, that

the fact must be established by clear and satisfactory evidence." The testimony offered to show that the mortgage was not witnessed when executed and before it was recorded, falls short of this rule. The fact is not established by clear and conclusive proof that it was not witnessed when executed. It would serve no useful purpose to go into a detailed discussion of the evidence upon this point, and we shall not do so. It is sufficient to say that, giving to the testimony offered to show that the mortgage was not witnessed before it was received for record, all the weight to which it is entitled, it fails to establish that fact in a clear, satisfactory manner.

Assuming, then, that the mortgage was witnessed when it was left at the office of the register to be recorded, the further important inquiry arises as to what effect must be given to the record as constructive notice to subsequent *bona fide* purchasers for value. This record was in this state. The entry of the mortgage was made in the general index book, but the full record of the instrument had no subscribing witnesses. And therefore the question is, Would such a record operate as constructive notice to subsequent purchasers for value, independent of any actual notice? It is claimed by the counsel for the plaintiff that the record does and should so operate, notwithstanding the mistake in the registration or recording of the instrument *in extenso*. This presents a question of no little difficulty, which must be solved by the application of general principles of law to the provisions of our statute.

It is a familiar rule, that an instrument must be properly executed and acknowledged so as to entitle it to record, in order to make the registry thereof operate as constructive notice to a subsequent purchaser. Says Mr. Justice Story: "The doctrine as to the registration of deeds being constructive notice to all subsequent purchasers, is not to be understood of all deeds and conveyances which may be *de facto* registered, but of such only as are authorized and required by law to be registered, and are duly registered in compliance with law. If they are not au-

thorized or required to be registered, or the registry itself is not in compliance with the law, the act of registration is treated as a mere nullity: and then the subsequent purchaser is affected only by such actual notice as would amount to a fraud." 1 Eq. Jur., § 404. See also *Ely v. Wilcox*, 20 Wis., 528; *Fallass v. Pierce*, 30 id., 444; *Lessee of Heister v. Fortner*, 2 Binn., 40; *Shove v. Larsen*, 22 Wis., 142, and cases cited on p. 146. Under our statute, among other requisites, two witnesses are essential to a conveyance, to entitle it to record. The statute requires every register to keep a general index, each page of which shall be divided into eight columns, with heads to the respective columns as prescribed; and the duty is imposed upon the register to make correct entries in said index of every iustrument received by him for record, under the respective and appropriate heads, and immediately to enter in the appropriate column, and in the order of time in which it was received, the day and hour of reception; and it is declared that the instrument "shall be considered as recorded at the time so noted." R. S. ch. 13, secs. 142, 143. In *Shove v. Larsen, supra*, the effect of this index containing correct entries of matters required to be made therein was considered. And it was held that by force of the statute it operated as constructive notice to a subsequent purchaser. In that case the index contained an accurate description of the land mortgaged, but, in transcribing the mortgage at large upon the records, a mistake was made in the description. And it was claimed in behalf of the subsequent purchaser, that it was the registration of the instrument at large which alone amounted to constructive notice. But this construction of the statute was not adopted, the court holding that a subsequent purchaser was bound to take notice of the entries in the index, which the law required the register to make. This result seemed to follow necessarily from the language of the statute, which declared that the instrument should be considered as recorded at the time noted. Time might elapse before the instrument was transcribed at large on the

record, or it might be lost and not transcribed at all, leaving the index the only record of its contents. And the manifest intention of the statute seemed to be to make the index notice of all proper entries from its date, and also of the instrument itself till it was registered in full. The further consequence would seem necessarily to result from this view of the statute, that the registration of the conveyance *in extenso* relates back to the registration in the index, and from thence there is constructive notice of the contents of the instrument. The doctrine of *Shove v. Larsen* was approved in *Hay v. Hill*, 24 Wis., 235 ; but the court refused to make the entry in the index in that case operate as constructive notice, because upon its very face it bore conclusive evidence that it was not made at its date. In other words, the rectitude and integrity of the index were successfully impeached by the index itself. See also *International Life Ins. Co. v. Scales*, 27 Wis., 640. Where there is nothing upon the face of the index to impeach or throw suspicion upon its accuracy, there it would affect a subsequent purchaser with notice of those facts which the law required to appear therein. Doubtless a still further consequence follows from this construction of the statute, namely, that where by some mistake there is a discrepancy between the proper index entries and the instrument as registered, there each supplies the defects of the other in the constructive notice thereby given. That is, it appears to be the intention of the statute to charge the subsequent purchaser constructively with such knowledge as the proper index entries afford, as well as with notice of those facts derived from the registration itself. He is presumed to have examined the whole record, and is affected with notice of what it contains. But when the instrument, as registered in full, appears defective in some material and essential parts which are not supplied by the index entries, what effect then must be given the record as constructive notice? This is really the difficult question in this case. From the entries in the index it would not appear whether the mortgage was wit-

nessed or not.   The presumption from the mere entries them-selves would be, that it was witnessed and acknowledged so as to entitle it to record.   But when the mortgage as registered in full was examined, it would be found that it had no witnesses and had no business on the records.   As the record itself is only constructive notice of its contents, it is difficult to perceive how it can go beyond the facts appearing upon it, and charge a purchaser constructively with knowledge of a fact not in the record.

One of the counsel for the defendants states the argument on this point as follows :   He insists and claims that the entries in the index book, so far as they indicated that the mortgage had been filed for record, indicated also that the mortgage was so executed as to entitle these entries of it to be made ; but that when the full record was looked at for all the particu-lars of the mortgage, and perhaps for the express purpose of verifying the entries in the index, it is found that the apparent assertion by the index entries that the mortgage was properly executed was wholly untrue, and that the mortgage in fact was no incumbrance.   The fact, as truly shown to exist by the full record, overcomes and destroys the false assertion as to the fact in the index.   And it appearing by the instrument registered that it was not entitled to record, both the registration and in-dex itself cease to affect the purchaser with constructive no-tice.

It is not readily perceived wherein this argument as to the effect of our various provisions upon the subject of registra-tion is unsound.   The question mainly depends upon the con-struction of our own statutes.   So far as we are aware, this is the first time the point has been presented in this court for ad-judication.   We have derived but little aid from the decisions in other states, for the reason that few of them have similar statutory provisions.   We have been referred by the counsel for the plaintiff to two cases in Michigan, *Brown v. McCormick*, 28 Mich., 215, and *Starkweather v. Martin*, id., 472.   In *Brown*

*v. McCormick* the effect of the registry, as notice to subsequent purchasers, was made to turn upon the curative act of 1861, mentioned in the opinion. In *Starkweather v. Martin* the question was, how far the absence, on the registry of a deed, of any mark or device indicating a seal, or of any statement of the register that the original was sealed, affected the validity of the record entry as evidence of title. The record entry of the deed was made more than forty years before the cause was decided, by the proper officer, and in the appropriate place for the registry of deeds, under the law permitting the registry of only sealed instruments; and the instrument was in the form of a warranty deed, purporting to be acknowledged and dated at a time when it was the common and lawful course to seal conveyances, and contrary to official duty to take the acknowledgment unless the conveyance was sealed, and where the conclusion, attestation clause, and certificate of acknowledgment of the instrument all spoke of it as under seal. The court said that these facts and incidents taken together afforded a very strong presumption that the original was sealed.

The doctrine of this case does not seem to have a very strong bearing upon the question under consideration. It may be said that it was contrary to the duty of the register to record the mortgage unless it was properly acknowledged and witnessed, and that a presumption arises that he would not have done so. But in answer to this it may also be said that the law made it the duty of the register to record, or cause to be recorded *correctly*, all instruments authorized by law to be recorded. Sec. 140, ch. 13, R. S. 1858. And the presumption that he performed his duty in recording the mortgage correctly, is as strong as the presumption that he would not have recorded it unless it was entitled to registry.

In *Shove v. Larson*, a number of cases are referred to which hold that a mistake in recording a deed, or recording it out of its order, renders the registration ineffectual as notice to subsequent incumbrancers and purchasers. The doctrine of those

cases would seem to be applicable to the case before us. The registration and index entries being incomplete, because showing that the mortgage had no subscribing witnesses, constructive notice could not be presumed of such a record. For the principle " that the registry is notice of the tenor and effect of the instrument recorded, only as it *appears upon that record*," fully applies. *Shepherd v. Burkhalter*, 13 Ga., 443. See, in addition to the cases cited in *Shove v. Larson, Brown v. Kirkman*, 1 Ohio St., 116; *Stevens v. Hampton*, 46 Mo., 404; *Bishop v. Schneider*, id., 472; *Terrell v. Andrew Co.*, 44 id., 309; *Frost v. Beekman*, 1 Johns. Ch., 288.

The question then arises, whether the evidence shows that any of the defendants were affected with actual notice of the mortgage. This question, we think, must be answered in the affirmative, so far as the defendants *Thomas Maloy* and *Stanislaus Bartosz* are concerned.

In the deposition taken on his own behalf, but read as a part of the plaintiff's case, *Thomas Maloy* distinctly admits that he had heard, when he purchased his lots, that there was a defective railroad mortgage upon them, but that he did not look for it, because his abstract did not show it. It is claimed by one of the counsel for the defendants, that this related to the Aiken mortgage, and not to the one upon which this action is brought. It seems to us, however, that this is a totally inadmissible construction of the testimony. He most certainly refers to the mortgage in suit. And what he had heard about there being a defective railroad mortgage upon the property, was sufficient to put him upon inquiry. *Parker v. Kane*, 4 Wis., 1. " What is sufficient to put a purchaser upon an inquiry is good notice; that is, where a man has sufficient information to lead him to a fact, he shall be deemed conusant of it." Sugden on Vendors, p. 335, 9th London ed. " In regard to the inquiry required of a party, it should be such as a prudent and careful man would exercise in his own business of equal importance. Accordingly, where the mortgagee is informed that there are charges affect-

ing the estate, and is cognizant of two only, he cannot claim to be a purchaser without notice of other charges, because he believes that the two, which satisfy the word charges, are all the charges upon it. He is bound to inquire whether there are any others. The rule with respect to the consequences of a purchaser abstaining from making inquiries does not depend exclusively upon a fraudulent motive; a man may abstain from mere heedlessness, or stupidity, and be none the less responsible for the consequences; but if he make reasonable inquiry, and is deterred by a false answer, he is excusable, if it be of a character to delude a prudent man." 1 Story's Eq. Jur., § 400 b; *Jackson v. Van Valkenburgh*, 8 Cow., 260. Independently of the record, *Maloy* had notice of the existence of the mortgage, or had a knowledge of such facts as to call for further inquiry. He cannot, therefore, be protected as an innocent purchaser for value.

The defendant *Bartosz* must be charged with notice of the mortgage by the recitals in the deed from Tenney and wife to his immediate grantor. He was present when that deed was executed and delivered to his uncle. He testifies that he did not know whether anything was said about the railroad mortgage at that time or not; that he did not understand English very well. The purchase was really made by his uncle for him. And whether he fully understood the conversation at the time about incumbrances, he must be chargeable with notice of what appears in his chain of title. This clause was in the deed to his uncle: "Said premises are free and clear from all incumbrances except a mortgage to the La Crosse Railroad Co., which I am to save said *Bartosz* harmless from." The general rule upon this subject is, "that where a purchaser cannot make out a title but by a deed which leads him to another fact, he will be presumed to have knowledge of that fact." The following authorities are very clear and decisive upon that point: *Fitzhugh v. Barnard*, 12 Mich., 105; *Case v. Erwin*, 18 id., 434; *Baker v. Mather*, 25 id., 51; *Howard Insurance Co. v. Halsey*, 8

N. Y., 271; *Frost v. Beekman, supra*, p. 298; *Gilbert v. Peteler*, 38 N. Y., 165; *New v. Westcott*, 46 id., 384; *Coles v. Sims*, 5 De Gex, M. & G., 1. The clause in the deed referred to the mortgage as an existing incumbrance, and he cannot now in good faith claim that it is not a lien upon his property.

The counsel for the plaintiff claims that the defendant *McLindon* had actual knowledge of the existence of the mortgage. It is true, he testified that when he purchased, he knew by report that there was a railroad mortgage upon the property, but he says that the report stated that the mortgage was void. Were he not protected by another principle, he could not certainly be regarded as a *bona fide* purchaser. But he purchased from S. S. Johnson, or claims through Johnson, in whom the title stood free from any taint. For the rule is well settled, that a purchaser affected with notice may protect himself by purchasing of another who is a *bona fide* purchaser for a valuable consideration. For a similar reason, if a person who has notice sells to another who has no notice and is a *bona fide* purchaser for a valuable consideration, the latter may protect his title, although it was affected with the equity arising from notice in the hands of the person from whom he derived it. Mr. Justice STORY says this doctrine, in both of its branches, has been settled for nearly a century and a half in England. 1 Eq. Jur., § 410. He states an exception to the rule, which was recognized and enforced in *Ely v. Wilcox*, 26 Wis., 91, where the estate became revested in the original fraudulent grantee, when the original equity was held to reattach to it. There is no pretense that *McLindon* comes within the exception; and as a *bona fide* purchase of an estate, for a valuable consideration, purges away the equity from the estate in the hands of all persons who derive title under it, he is protected. It is said that it does not appear that Johnson's title was derived from the common source. As we understand the bill of exceptions, an abstract was offered in evidence to show title from *Dunn*, by various intermediate conveyances, to the

defendant, which was ruled out on the plaintiff's objection. But perhaps it is a better answer to the objection to say that the plaintiff has made the defendants parties under the general allegation that they claim some interest in or title to the mortgaged premises, which was subject to the mortgage. This allegation implies that this interest was not adverse, but was derived from *Dunn*, though subsequent in date and inferior in right to the plaintiff's mortgage.

It was further insisted that the evidence showed that the defendant *Mary Maloy* had actual notice of the mortgage. We do not think this position is sustained by the testimony. It is attempted to charge her with the same actual knowledge her husband had, because he aided her when she made her purchase of Martin Maloy. It does not appear that anything was said at this time about the railroad mortgage, or that she ever had any notice of it. It does not appear, even, that he was acting as her agent in any legal sense; and besides, if he were, his knowledge acquired at another time, when not engaged in her business, ought not to be imputed to her. Notice, to bind the principal, should be brought home to the agent while engaged in the business or negotiation of the principal, and when it would be a breach of trust in the former not to communicate the knowledge to the latter. 1 Story's Eq. Jur., § 408, and cases cited in note 1. The evidence fails to bring her within that rule.

A number of other questions were discussed upon the argument; but we believe these observations dispose of all the more important ones.

The judgment of the circuit court as to the defendants *Thomas Maloy* and *Stanislaus Bartosz* must be reversed, and the cause remanded for further proceedings in accordance with this decision.

*By the Court.* — It is so ordered.