The Oconto Company vs. Jerrard and another.

THE OCONTO COMPANY vs. JERRARD and another.

| 46 | 317 |
|----|-----|
| 79 | 205 |
| 46 | 317 |
| 88 | 333 |

TAX DEED: REGISTRY OF DEED. *(1) Registry statute applicable to tax deed. (2, 3) What books in register's office essential to constitute record. (4) Omission of description of land from general index. (5) Presumption as to date of entries. (6) Statute of limitations as to tax deeds; runs where there was no valid assessment.*

1. The statute (R. S. 1858, ch. 13, secs. 141–143) defining what shall constitute a record of a deed or other like instrument in the register's office, applies to all instruments proper to be so recorded, without exception or discrimination; and that is a sufficient registry of a *tax* deed which would be a sufficient registry of any other deed. An *obiter* remark in the opinion in *I. L. Ins. Co. v. Scales*, 27 Wis., 640, criticised.

2. Where the register of a county testified that no "reception" index was kept in his office, meaning apparently the "general index" of the statute, but it appeared that two indexes were kept, each covering all the successive volumes of records, one with the names of the grantors, and the other with those of the grantees, alphabetically arranged, and that the former contained all the entries required by law to be made in the "general index:" *Held*, that the due entry of a deed upon such index must be regarded as a *record* thereof, under sec. 143.

3. The failure of the register to keep a *separate index to each volume* of the records, while a violation of duty, does not affect the operation of entries in the general index as constructive notice.

4. Where the register failed to enter on the general index, as the statute requires, the description of the land described in an instrument otherwise duly recorded therein, but in the column designed for that purpose merely entered a direction to see the record of the deed in full, referring to the volume and page: *Held*, that the record in the general index was complete *from the time when the deed was actually recorded in full;* and the statutory limitation in favor of the deed (which was a tax deed) then began to run.

5. The *presumption* is, that all the entries touching a deed were made, and the deed recorded *in extenso*, on the day of its receipt by the register; and this presumption is not overcome by the testimony of a *subsequent* register of deeds of the same county, that during his term of office "it was his habit not to make entries in the index until after he had recorded instruments at length, and that he did not always record deeds on the day of their entry in the index."

6. Where the grantee in a tax deed has been in possession under it for three years next succeeding the record thereof, the deed cannot be impeached on the ground that the tax was invalid *for want of a valid assessment*, under the decisions in *Marsh v. Supervisors*, 42 Wis., 502, and other cases.

APPEAL from the Circuit Court for *Shawano* County.

Ejectment, commenced apparently in 1878.[1]  Defendants claimed under a tax deed recorded, according to their contention, August 8, 1874; and the principal questions arising on the trial, and considered by this court, were, whether the deed was ever recorded; and whether, if so, the statute of limitations had run in defendant's favor.  The facts bearing upon these questions are sufficiently stated in the opinion.  The plaintiff had a verdict and judgment; and defendants appealed from the judgment.

For the appellants, there was a brief by *George H. Myers*, and oral argument by *B. J. Stevens*.

For the respondent, there was a brief by *Hastings & Greene*, and oral argument by *Mr. Greene*.

RYAN, C. J.  Several minor questions were discussed on this appeal.  But the two principal questions raised dispose of the case, and these only will be considered.

For three years after the record or attempt to record the tax deed, if there were any actual possession of the premises, it was in the appellants.  And the only substantial questions are, whether and when the tax deed can be considered as recorded; and whether the statute of limitation is a bar to the objections raised against the deed.

I. The practice imputed to the office of register of deeds in this case, said upon the argument to prevail in several counties, is but another instance of the willful disregard by town and county officers of the statutes creating their offices. This is a grave evil, for which the safety of public and private interests requires peremptory redress.  In the mean time, it is the duty of courts to save such interests as they can from the disregard of duty by any of these classes of officers.

---

[1] The printed case does not show when the action was commenced; a defect very common in printed cases, even where the statute of limitations is relied on.  It was conceded in this case, however, that more than three years had intervened between August 8, 1874, and the bringing of the action.  REP.

It was said on the argument that, in upholding title by tax deed under the statute of limitation, the court can indulge in no presumption, but must hold the party to the very letter of the statute. That may be granted; but the statute of registry does not admit, and the court cannot favor, any distinction between the registering of a tax deed and the registering of any other deed. What is a sufficient registry of one deed, is a sufficient registry of every deed.

A doubt was improvidently thrown upon this position by DIXON, C. J., in *I. L. Ins. Co. v. Scales*, 27 Wis., 640. But the remark was wholly foreign to the case, and has no foundation in the statute. Various statutes mention the record of deeds. One statute only defines what shall constitute a record, and that applies to all instruments proper to be recorded, without exception or discrimination.

The statute requires each register of deeds to indorse on every instrument received for record, the time when it is received, and the volume and page in which it is recorded. It requires him also to keep a general index of eight columns. Six only of these eight columns affect the registry of the instrument. These are to state, respectively, the time of reception, the name of the grantor, the name of the grantee, the description of the land, the name of the instrument, and the volume and page where recorded. And the register is required, immediately upon the receipt of each instrument, to enter these details in the appropriate columns; declaring that thereupon the instrument shall be considered recorded. R. S. 1858, ch. 13, secs. 141, 142, 143.

Practically, there must always occur some brief interval between the receipt of the instrument and the noting on its back, and the filling of the columns stating the volumes and page where it is recorded. But the theory of the statute appears to be, that the actual record of the instrument immediately follows its reception, and that all these duties are, as far as possible, simultaneous. In large offices, the delay in stat-

ing the volume and page of the record may be often more than nominal; going beyond the day or perhaps several days. But the other entries affecting the record should be immediately made. They give all the information necessary to the constructive notice of the instrument, which can be given without the record of the instrument at large; and until the record at large be made, the instrument itself remains to supply its place. And when the record at large is necessarily delayed, it relates back to the time of the entries in the general index, and so satisfies the statute. *Pringle v. Dunn*, 37 Wis., 449. But all the details of registry are dealt with by the statute as parts of one continuous, cotemporaneous process.

The register is also required to keep a double, alphabetical index to each volume of records; on one page of the names of grantors, and on another page of the names of grantees, in each instrument, with reference to the page of the record. Sec. 144.

The evidence of the register, who was examined on the trial, is not very clear. He testifies that no " reception " index has ever been kept in his office. He appears to mean the general index of the statute. He states that two index books have been kept: one of grantors, and one of grantees. As far as his testimony can be understood, these two books are made to fill the double office of the general index and of the alphabetical index of each volume, required by the statute. This saving of labor, if the testimony is properly understood, is simply a disregard of the statute, and a violation of the register's oath of office.

But the headings of the columns in the index book of grantors appear to be nearly or quite identical with the headings of the general index of the statute. This index gives the time of reception, the name of the grantor, the name of the grantee, the description of the land, the name of the instrument, and the volume and page where recorded, as well as the proper headings of the other two columns. The index book of grantees appears to contain the same columns with the same

headings, reversing the order of grantors and grantees. Both appear to be alphabetical, the one following the names of grantors, and the other of grantees.

The violation of the statute, therefore, appears to be only in the omission of the proper index to each volume. The statute does not make this index necessary to the record of an instrument, and it has never been held by this court essential to the constructive notice of the record. On the contrary, the proper entries of an instrument in the general index have been uniformly held to be constructive notice as far as they go, and constructive notice of the whole instrument until recorded *in extenso*. *Shove v. Larsen*, 22 Wis., 142; *Hay v. Hill*, 24 Wis., 235; *Pringle v. Dunn, supra*. This volume index appears to be a convenience which it is the statutory duty of the register to keep. But the failure to keep it does not, in the terms of the statute or in reason, affect the registry of an instrument or its constructive notice.

And if the register meant to testify that the general index of the statute had not been kept in his office, he is contradicted by the book which he produced. For the index of grantors substantially complies with the statutory requisites of the general index. For whatever the register may have intended it, it is, in contemplation of law, the general index of the statute.

The entry of the tax deed in question, however, in the column of this index headed " description of land," is defective. It describes no land. The entry is simply a direction to see the record of the deed in full, referring to the volume and page. This is of course a failure to comply with the statute, to save the register the trouble of earning his fees of office. But the question remains, whether and how far it can defeat the record of the deed.

In *Shove v. Larsen, supra*, it was held that a correct description of the land in the general index operated to cure a defective description in the actual record of the deed at large.

On the same principle, the reference to the deed in this case, when recorded, would cure the want of description in the index. *Certum est quod certum reddi potest.* The statutory direction is substantially complied with by a certain reference to another book in the same office. No sane man, searching the general index for instruments affecting any land, would disregard such a reference. And it would be a severe technicality to avoid the registration of a deed for such a failure in duty of the register, with such present and easy means given on the face of the index, of obtaining the information which the index itself should have given. The cruelty of such technicality would be apparent in the case of any instrument except a tax deed. And, as already seen, what can impair the registry of a tax deed, impairs the registry of any deed.

A failure of the register to make the proper entries in the general index, immediately on the receipt of the instrument, does not defeat the registry, but only delays it until they be made. And the court feels compelled to hold that the registry of the tax deed was complete, to give constructive notice to all the world, when it was recorded *in extenso*, and the reference to the record made in the general index. And the only remaining difficulty on this point is the question of time.

It has already been seen that, in contemplation of law, all the details of registry constitute one continuous, cotemporaneous process. And this raises a presumption, until it be rebutted by evidence, that all the entries in this case were made, and the deed recorded *in extenso*, on the day of its receipt by the register. There is a general presumption that official duty is duly performed, until the contrary appears. *Omnia præsumuntur rite acta donec probetur in contrarium.* And the record here furnishes evidence of its own to support the presumption. The deed is recorded at length in the volume and page referred to in the index. And there is a memorandum at the foot of the record, that the deed was received

for record at the time mentioned in the index, and there recorded. Indeed, the very hardihood of the register, in omitting the description in the general index, has a tendency to support the same presumption. For, loose as he appears to have been in complying with the statutory details of his duty, it would be a violent presumption that he wantonly suspended the entire operation of the registry laws, which he was chosen to administer, by delaying beyond the day any entry necessary to give constructive notice of the instrument he had received to record. Until it be disproved, all his entries must be presumed to have been made at the date which they purport to bear. This principle is plainly recognized in *Hay v. Hill*, and perhaps in *Pringle v. Dunn, supra*.

The learned and astute counsel of the respondent appeared to feel the force of this view; and accordingly relied on the testimony of the register to rebut the presumption arising from the record. But the register who recorded the deed in question was not called. The witness was not register until long after. And he testified to his own habit only. He stated it to be his habit not to make entries in the index until after he had recorded instruments at length; and that he did not always record deeds on the day of their entry in the index. There seems to be an implication here, that, in the witness's official time, the business of the office might be completed each day; though he sometimes left it incomplete, making his duty wait on his will; and that he habitually violated the statutory order of his duties. But he says nothing of the practice of his predecessors. The legal presumption is, that they were not so reckless of their official duty. And the suggestion of his evidence that it might be done, strengthens the presumption of fact that all the entries of the deed in question, and its record at length, were made on the day of its receipt.

The duties of the office of register of deeds are of very high importance, and are exceedingly simple and plain. Any reasonably intelligent young man might make himself master

of them in a few hours.  Any reasonably careful man, who can fairly read and write, can readily perform the duties of so small an office as the one here in question appears to be, in strict compliance with his duty, without spot or blemish.  And it is intolerable that great public and private interests should be put in jeopardy by wanton disregard of such exact duty, so plainly prescribed by statute.  On the argument, it was suggested both from the bench and bar, that this is not a solitary instance.  But, be the evil more or less prevalent, it is the plain duty of the court, as far as it can without violation of the letter or spirit of the registry law, to protect the great interests involved against the incompetency or infidelity of the officers intrusted with them, *ut res magis valeat quam pereat.*

Until the contrary shall appear in evidence, the entries in the general index of the tax deed in this case, and its record *in extenso*, must be taken to have been made on the day of the receipt of the deed, as indorsed upon it and entered in the general index.  And on that day the statute of limitations commenced to run, if it ran at all, on the deed.

II.  There can be no question that the respondents impeached the tax proceeding which culminated in the deed under which the appellants claim, so as to bring it within the rule of *Marsh v. Supervisors*, 42 Wis., 502, and other cases in this court.  There can be no question that the respondents might have enjoined the execution of the deed, or have successfully impeached it in any action involving its validity, before the statute had run upon it.  And the only question is, whether they are in time to do so now; the respondents contending that the statute does not run upon a deed based upon a tax proceeding so defective in such essentials.

It has been said that "a valid assessment only can support a valid tax."  There is no pretense that the tax for which the deed here was issued, proceeded "upon a regular, fair and equal assessment of the property to be taxed, made by the

officers, in the manner and with the securities and solemnities provided by statute." And in such a case it has been said that " there is no tax." *Marsh v. Supervisors, supra.*

Language perhaps still stronger is used in *Philleo v. Hiles,* 42 Wis., 527: " It is not easy to perceive how any court of law or equity could be expected to uphold a tax deed, and to foreclose the right of the true owner against it, where no tax had been levied on the land; or to require payment of a pretended tax as a condition precedent to the defense that there was no tax to support the alleged tax deed; or to hold any statute authorizing such things a valid enactment. It is true that such is not one of the enumerated defenses of sec. 38, which may be made without deposit. But the omission shows that the legislature, in giving the action to the grantee of the tax deed, presupposed a tax to support it. For, without a tax, there cannot properly be a tax deed. Where there is no tax, a paper formally executed in the likeness of one, has, against the true owner, no legal or equitable attribute of a tax deed. And the defense of the proposed answer in this case is admissible, without deposit, not so much because it goes to bring the defendant within sec. 38, as because it goes to take the plaintiff out of sec. 35. To require prepayment of the amount of tax sale, in such a case, would be to create a lien on land, not by a tax, but by a tax sale where there had been no tax."

Strong as this language is, it would have been true of the tax deed in question, and would be true still, were the validity of the tax deed an open question. But these things were said, in the one case of a tax proceeding which had not matured in a deed, and in the other of a tax deed upon which the statute had not run. The former was a proceeding to enjoin a tax deed, and the latter to foreclose a tax deed. In both, the validity of the tax proceeding was open to inquiry, was the precise subject of litigation. There was no bar to the inquiry. The rights of the parties rested on their intrinsic validity, wholly unaffected by the time of the litigation. The language of the

court applies to the circumstances and conditions of the questions in litigation. Here the question is, whether the respondents have not suffered the time to pass, within which they had the right to scrutinize the tax proceeding, or to raise such objections to the tax deed, or to apply such language to either; whether the statute has not closed their mouths forever, absolved the tax proceeding from all such errors, established the tax deed beyond impeachment, and barred the better title in favor of the worse, according to the operation of all statutes of limitation affecting the title to realty.

*Interest reipublicæ ut sit finis litium.* It is therefore the policy of the law that some reasonable lapse of time should end all controversies; that unchallenged possession under color and claim of title, however defective, should ripen in time into title unchallengeable. This is the philosophy of statutes of limitation. They are therefore called statutes of repose. They give possession rest from litigation. When they have run, they bar forever all previous rights against the title which they protect; silence forever all objections against it and all criticisms upon it. The claims which would have prevailed over it before, become extinct. The defects which would have been fatal to it before, are cured. Whatever could have been heard to impeach it before, can be heard no more forever. So it is here. The respondents had their day to impeach the tax proceeding and avoid the tax deed. Then they might have said that the groundwork was so defective that there was no tax, and that the deed was therefore no tax deed. This they did not then do, and they are now too late to do it. They suffered the statute to purge the tax proceeding of all defects, to raise the tax deed above impeachment. Their objections may be well founded. But they come out of time. What the respondents might have said, they cannot now say. The statute has left them like one estopped to speak the truth, because they did not speak it when they might.

That has been the construction uniformly given by this court

to the statute of limitations in relation to tax deeds. It has been uniformly held, in a multitude of cases, that, as against the grantee of a tax deed, the statute puts at rest all objections against the validity of the tax proceeding, whether resting on mere irregularity or going to the groundwork of the tax. The statute makes a deed valid on its face *prima facie* evidence, as soon as executed, of the regularity of all the proceedings, from the assessment of the land, inclusive, to the execution of the deed. And the effect of all the decisions is, that when the statute has run in favor of the grantee, the deed becomes conclusive to the same extent. See *Edgerton v. Bird*, 6 Wis., 527, and the cases collected in the note of Vilas & Bryant; *Lawrence v. Kenney*, 32 Wis., 281; *Wood v. Meyer*, 36 Wis., 308.

The terms of the statute bar any action to recover the possession of land sold and conveyed by deed for nonpayment of taxes. And the learned counsel of the respondents contends that, to bring a tax deed within the statute, the validity of the tax and of the sale must be established. Such a construction would go far to make the statute a dead letter. The statute was designed to protect things *de facto*, not things *de jure*. When there has been an actual attempt, however defective in detail, to carry out a proper exercise of the taxing power, the statute applies. And the trouble with the argument is, that in such a case, saving the instances excepted by the statute itself, after the statute has run, the tax deed itself conclusively establishes the validity of the tax and of the sale.

The late learned and able chief justice, in *Knox v. Cleveland*, 13 Wis., 245, suggests the only condition of things to which the statute will not apply: want of authority *ab initio* of the taxing officers to put the taxing power in motion. "The general authority of the taxing officers and the liability of the land to taxation being conceded, all other questions are at an end. If either of them were wanting, another question would be presented. It might then be urged that there was a defect

of jurisdiction; that the sale was altogether unauthorized and void, and passed no title or color of title, and furnished nothing upon which the statutory bar could operate."

Property exempt from taxation by law is excepted from all authority to levy taxes, and is as much without the jurisdiction of taxing officers, as if it were without their taxing district or without the state. A tax cannot attach to it, because it is not a subject of taxation.

The power of taxation is an attribute of sovereignty, and can be exercised only under express authority of the sovereign. Every tax in this state must be expressly authorized by statute. The state acts through its municipalities, and the municipalities act through their officers. But the municipalities can act under legislative authority only; and without legislative authority they cannot put their taxing officers in motion. These officers may take their authority directly from statute, or from their municipalities under authority of statute. But their offices *ex proprio vigore* confer no authority upon them to institute a tax proceeding.

And when municipalities or their taxing officers assume to levy a tax or to institute a tax proceeding not authorized by statute, they are outside of their functions, and are not acting *virtute officii*. They are not in the exercise of the sovereign power of taxation, and are as powerless to tax as private persons. Their whole proceeding is a mere usurpation, and absolutely void throughout for all purposes.

In such a case there is nothing for the statute of limitations to act upon. But when there is statutory authority within the scope of the constitution, to raise money by taxation, from property subject to taxation, to come into the public treasury for public use, and there is an actual attempt, under color of law, to exercise the authority, it is, while *in fieri*, *prima facie* a valid tax proceeding; and when the statute of limitations has run upon it, it is conclusively established as a valid exercise of the taxing power.

The distinction is, in principle, like that between judicial jurisdiction and judicial error.    Want of jurisdiction is always an open question, everywhere.    Error can be imputed only by appropriate judicial proceeding, within the time limited by law to establish it.

Under the evidence in this case, it appears *prima facie* that the tax deed was recorded three years before the commencement of this action, and that the statute had barred it.

*By the Court.* — The judgment is reversed, and the cause remanded to the court below for a new trial.