## PARISH and others vs. EAGER.

The court refused in this case to dismiss an appeal for a defect in the justification to the undertaking—the objection having been taken on the argument only, without any motion filed for such dismissal.

If there had been such a motion, the appellant would have been permitted to file a new undertaking.

In ejectment against a party claiming under a tax deed recorded in 1845, the court refused to instruct the jury that if the defendant had been in open and notorious possession of the land for three years previous to the publication of chapter 197, General Laws of 1859, the action was barred. It did not appear from the bill of exceptions whether there was any evidence of possession by the plaintiff during the three years next after the recording of the deed. *Held*, that it would be presumed that there was such evidence, and that the instruction was refused for that reason.

Where the owner of land is in actual and notorious possession of it at the time

June ' Term,
1862.

PARISH et al.
v.
EAGER.

when a tax deed of the same is recorded, and continues so in possession for three years thereafter, an action on the deed is barred.

But when the premises are not in the actual possession of any one, a recorded tax deed draws after it constructive possession, and is such an assertion of title by the claimant under the deed as to enable the rightful owner to maintain ejectment.

Whether the omission of the taxing officers in 1842 to collect the taxes on land out of the personal property of the owner (which was sufficient for that purpose), would render the tax deed void under the three years limitation law, is a question not properly presented in this case.

Whether counties were authorized in 1842, to bid off lands for taxes when there was no other purchaser, *quære.*

Under section 2, p. 102, Territorial Statutes of 1839, a county could take title to any land conveyed to the county treasurer for its use, whether such lands were purchased for the erection of county buildings or other public uses of the county, or not.

C bid off a tract of land at a tax sale in 1842, as agent for the county in which the land lay, and afterwards assigned the tax certificate to the county treasurer for the use of the county; and the tax deed was executed in December, 1854, by the clerk of the board of supervisors under an order of the board, to the county treasurer for the use of the county. *Held,* that the county could take title by such conveyance.

*Sprecker vs. Wakeley,* 11 Wis., 432, adhered to.

APPEAL from the Circuit Court for *Grant* County.

Ejectment for a tract of land in Grant county, commenced in August, 1859, by *Charles F. Legate,* and the widow and heirs of Thomas J. Parish, deceased. In February, 1838, *Legate* and Parish became owners of the land as tenants in common. Parish died in 1847, and several of his heirs were infants at the commencement of this suit.—The defendant introduced proof showing that the land in controversy was returned as delinquent and sold for the taxes of 1842, "and that James P. Cox, as agent for said county [of. Grant] and in behalf of said county, became the purchaser." He also offered in evidence: 1. A deed made December 15th, 1844, by "Lenhart O. Shrader, clerk of the board of commissioners of Grant county," of the first part, to "Robert Templeton, treasurer of Grant county, for the use and benefit of said county," of the second part, which, after reciting, in the usual form of tax deeds, the sale of the land in controversy by the collector of said county in December, 1842, for the unpaid taxes of that year, to J. P. Cox, and the assignment by Cox of the certificate of sale to said Templeton, treasurer,

for the use of said county, continued as follows: "Now, therefore, the said Lenhart O. Shrader, clerk as aforesaid, in consideration of &c., doth in the name of the Territory of Wisconsin, grant, &c., to the said party of the second part, and to his heirs and assigns forever," &c., [here follows a description of the land in controversy.] The deed was signed "L. O. Shrader, clerk," and his private seal and the seal of the board of county commissioners were affixed to it. It was recorded January 7th, 1845. 2. An order of the board of supervisors of Grant county, passed June 5th, 1849, appointing the clerk of the board agent of the county to sell and convey its title and interest in any lands acquired under tax sales. L. O. Shrader was clerk of the board at that date. 3. A deed made May 20th, 1854, by "W. R. Beach, agent duly appointed by the board of commissioners of the county of Grant    *    to contract in this behalf for    *    said county and the inhabitants thereof," of the first part, by which, in consideration of $24.00, the party of the first part released and quit-claimed to Robert Andrews the right and title of the county of Grant and of its inhabitants to the land in controversy in this action. This deed was signed "Wood R. Beach, agent of the county of Grant, Wisconsin, to sell and convey the realestate of said county," was executed under his private seal, and was recorded May 20th, 1854. The plaintiffs objected to the admission of the first mentioned deed, on the ground that the county could not be grantor and grantee in the same conveyance, and that the deed was not in the name of the state, "and for other defects apparent on the face of the deed." They objected to the admission of the order under which Mr. Beach executed the deed to Andrews, on the ground that the county "had no authority to delegate its official powers to any person, and that said order was null and void." They objected also to the admission of the deed from Beach to Andrews. But the order and both of the deeds were read to the jury, subject to the opinion of the court. The defendant deduced his title from Andrews by several mesne conveyances, and there was proof tending to show that he and those under whom he claimed had been in the actual

possession of the land from 1854 until the commencement of the action, and had made valuable improvements upon it. —On the part of the plaintiff, it was shown that Thomas J. Parish, to whom the land was assessed in 1842, was assessed also that year in the same district for $300 of merchandise, and that he had a large amount of personal property in that district during the year 1842. There was no evidence that said property, or any of it, was sold for taxes.

The defendant asked the court to instruct the jury "that the defendant, claiming under a tax deed duly acknowledged and recorded, and showing a connected chain of title from [the grantee in] said tax deed to himself, if the jury should find that the defendant, or those under whom he claims, have been in the open and notorious possession of the land in controversy since 1854, or for three years previous to April 8, 1859 (the time of the publication of chapter 197, General Laws of 1859), making valuable permanent improvements thereon, such possession under said tax deed was a good defense to this action; that such possession vested title in the defendant, or gave him such a defense as could not be taken away by subsequent legislation; that such defense was good at least as against such of the plaintiffs as were not shown to be minors." This instruction the court refused, and charged the jury "that the defense of the statute of limitations, on which the defendant relied, was repealed, and that the tax deed from which the defendant derived claim of title, together with the records introduced, was void, and not such as the statute of limitations applied to, if in force."

Verdict and judgment for the plaintiff.

*Mills & McKee*, for appellant, contended that the deed from Shrader to Templeton was a valid tax deed, but argued also that a tax deed which is void on its face, or which is shown to be void by evidence *dehors* (for all nullities must be equal whether patent or latent), may be such a challenge of the true owner's title as to bar him if he remains quiet until the statute has taken away his day in court. In *Edgerton vs. Bird*, 6 Wis., 530, the defendant claimed under a tax deed void on its face, because the territory of Wisconsin was not named as the grantor, and this court sustained it as a tax deed under

*June Term, 1862.*

Parish et al.
v.
Eager.

the statute of limitations. See *Woodward vs. Blanchard*, 16 Ill., 430, and *Moore vs. Brown*, 11 How. (U. S.), 414. It is enough that the tax deed gives color of title. Color of title, *claim asserted*, is the very condition that requires the aid of the statute. The owner cannot be allowed to say that a tax deed, solemnly executed, acknowledged and recorded, is no impeachment of his title. He cannot defeat it by outside proof or by internal criticism. The statute bars the true owner though the possessor has not a valid title, if he has had *color of title* not resisted within three years. The statute itself shows in what case the tax deed shall be void, or have no aid from the statute. It is "where the taxes have been actually paid." Will the court create an exception which the statute has not created? That the legislature itself proposed the exception, is an admonition to the courts that no other exception is to be superadded.

*Cutler & Clary*, for respondents, argued, among other things, that the deed introduced by the defendant below as a tax deed was void, because it was shown by the assessment roll that during the year the tax was levied, *Thomas J. Parish* had a large amount of *personal property* in the same assessment district liable to sale for taxes, which was not sold, but the land sold instead (section 2, chap 10, Laws of 1841); and because the county could not be grantor and grantee in the same conveyance; and because the county could not authorize any man as its agent to convey said premises, but that such conveyance must be made by the corporation through its corporate officers. They contended also that the three years' limitation did not apply to minors. See sec. 137, chap. 18, R. S., 1858.

*By the Court*, COLE, J. It was suggested on the argument that the appeal in this case should be dismissed for several reasons. No motion was filed, however, and although there are some informalities and defects in the record, particularly in the justification to the undertaking, still we are not disposed to dismiss an appeal for such a reason, where the objection is taken *ore tenus* on the argument. And we are the more inclined to disregard the objection at this stage

September 1.

of the case, for the reason that if a distinct motion had been made to dismiss the appeal on the ground that the undertaking was defective, the party appealing would have been permitted to file a new undertaking. It was also objected that the printed case did not fairly, fully and truly present the material facts in the case according to the return of the clerk. This objection is not entirely without foundation, but still the printed case is not such a departure from the rule as will authorize us in dismissing the appeal. The case will, therefore, be disposed of on its merits.

The case comes up on an exception taken to the refusal of the circuit court to give the jury an instruction asked for on the part of the appellant; and also upon an exception which was taken to an instruction given. But one remark will be made upon the refusal of the court to give the instruction asked. That instruction contains several propositions of law and fact, and may not be strictly accurate upon the question of possession. It assumes that if the defendant below, or those under whom he claimed, have been in the open and notorious possession of the premises under the tax deed since 1854, or for three years previous to April 8th, 1859, then he could claim the protection of the three years' limitation in bar of the suit. In one aspect of the case this would be in conflict with the decision of this court upon that point. See *Edgerton vs. Bird*, 6 Wis., 527; *Falkner vs. Stevens*, 7 id., 388; *Sprecker vs. Wakeley*, 11 id., 432; *Hill vs. Kricke*, id., 442. The tax deed was placed upon record in January, 1845, and if the owner of the land was in the actual, notorious possession of it at that time, and continued so for three years thereafter, then, according to the doctrine of the above cases, he might claim the benefit of the statute. But when the premises are not in the actual possession of any one, then a recorded tax deed draws after it constructive possession, and is such an assertion of title on the part of the party claiming under it as to enable the rightful owner to maintain ejectment. The bill of exceptions is silent as to whether any evidence was offered which showed who was in the actual possession of the premises—if any one was —intermediate the time when the tax deed was recorded and

June Term,
1862.

Parish et al.
v.
Eager.

1854. It is but fair to assume that there might have been some testimony bearing upon that point, which rendered the instruction objectionable. With these observations we dismiss the consideration of the first exception.

The court instructed the jury that the statute of limitations on which the defendant relied, was repealed, and that the tax deed from which, together with other records, he claimed title, was void, and was not such as the statute applied to if in force. This we deem erroneous. It appears that the land in controversy was assessed for taxes in 1842, and the taxes not being paid, the land was sold for the payment thereof. James P. Cox became the purchaser at the tax sale. He afterwards assigned the tax certificate to one Templeton, treasurer of the county, to whom the tax deed was executed by the clerk of the board of county commissioners in 1844, for the use and benefit of Grant county. The appellant traces title through various mesne conveyances from a deed executed by the clerk and agent of the county to one Andrews in 1854. Now it is apparent that the validity of the original tax deed depends essentially upon the question, whether the county was authorized to take title to lands in this way; and if so, whether the title became fully vested in it by the deed to Templeton. This is a question not free from difficulty. There was testimony introduced on the trial to show that Cox was appointed by the board of county commissioners as an agent to bid off for the county the lands for delinquent taxes, and that he purchased this tract in pursuance of such agency. We expected to find some express provision of law which authorized counties in 1842 to bid off land for taxes when there was no other purchaser, but we have not found any such provision. I am confident it was the general practice to do so under the territorial government, whether it was authorized by any express statute or not. And the proviso in section 10 of the Territorial Laws of 1843–4, page 22, clearly recognizes the existence of such a practice, and regulates the terms upon which persons can redeem "lands or town lots which *have been sold for taxes due thereon*, to any county, town or village of the territory." But perhaps it is not necessary to determine in this case

whether counties in 1842 could bid off lands for delinquent taxes and take the title, as is now done under our present system. For there is nothing in the tax certificate, as recited in the tax deed, which shows that Cox bid off the lands for the county. For aught that appears he might have purchased them as an individual, and afterwards sold and assigned the tax certificates to Templeton for the use and benefit of the county. We have then to inquire whether the county had capacity to take and hold the lands under these circumstances.

Section one of the "act to define the general powers of counties," &c., (Territorial Statutes of 1839, p. 102), declares that each county shall continue to be a body politic and corporate, with power to sue and be sued; to *purchase* and *hold* for the public use of the county, lands lying within its own limits, and any personal estate; to make all necessary contracts and to do all other necessary acts in relation to the property and concerns of the county. . The second section provides that "all real and personal estate heretofore conveyed, or which shall be hereafter conveyed by any form of conveyance, and duly acknowledged and recorded, to the inhabitants of any county, or to the *county treasurer*, or to any committee or other persons, for the use and benefit of such county, shall be deemed to be the property of such county; and all such conveyances shall have the same force and effect as if they had been made to the inhabitants of such county by their respective corporate names."

Now while it might with much force of reason be contended, that the power granted in the first section to purchase and hold lands for the public use of the county, had reference alone to such real estate as might be necessary and convenient for county buildings and other legitimate county purposes, and was not intended to authorize counties to bid off lands for delinquent taxes, still there is no limitation or restriction on the capacity of the county to take title under the last section. The county could take all real and personal estate which might be conveyed to it by any form of conveyance. It could take therefore whatever interest Cox had in the tax certificate which he assigned to Templeton, the

treasurer, for the use of the county. And when real estate was conveyed to the treasurer for the benefit of the county, the statute declared it should be deemed to be the property of the county. So that even if it be conceded that the county could not directly bid off lands at the tax sale, still as it was purchased by an individual who assigned the certificate to the county, we can see no valid objection to the transaction. And the deed from the county would be good and effectual to convey the title to Andrews. We are therefore unable to see upon what ground the circuit court held the original tax deed void. And if not void, the statute of limitations would apply to it as well as to any other tax deed.

For the purpose of showing that the sale of the land was void, evidence was offered on the trial which went to show that *Parish*, one of the owners of the land in 1842, had an ample amount of personal property out of which the tax could be collected. It is obvious that the question whether there was a sufficient amount of personal estate to pay the tax, was one for the jury. No instruction was asked for upon the point, or as to how this fact would affect the tax deed, if established to the satisfaction of the jury. We do not therefore have to consider whether an omission on the part of the taxing officers to collect the tax out of the personal estate, rendered the deed void under our three years limitation law.

The other question raised by the instruction, namely, the effect of repealing a statute of limitations which has already run in favor of a party in possession of land under a tax deed, and giving a right of action, was fully considered in *Sprecker vs. Wakeley*, 11 Wis., 432. We there held that such legislation destroyed vested rights, and was void.

It follows from these views that the judgment of the circuit court must be reversed, and a new trial ordered.