## LAND & RIVER IMP. CO. v. BARDON.

*(Circuit Court, W. D. Wisconsin. March 11, 1891.)*

1. FEDERAL COURTS—JURISDICTION—STATE STATUTES.
    An action under St. Wis. § 3186, enlarging the equitable remedies of quieting title and removing clouds, may be brought in a federal court.

2. TAX-DEEDS—STATUTE OF LIMITATIONS.
    The statute of limitations does not in the case of a tax-deed preclude inquiry as to whether a tax was levied, or, if levied, whether by competent authority, or whether the tax has been paid; but, barring these questions, the recording of a tax-deed valid on its face prevents any inquiry into the validity of the deed, or the regulating of the tax proceedings, after the lapse of the statutory period of limitations.

3. TAXATION—SALE IN SEPARATE TRACTS.
    Where a quarter section of land is owned by one person, the assessment and sale thereof as a whole is not in violation of a statutory provision that land shall be assessed and sold in separate tracts.

4. REGISTRATION OF DEEDS—INDEX.
    Rev. St. Wis. 1858, c. 13, § 142, provides that every register of deeds shall keep a general index, each page of which shall be divided into eight columns, with certain heads to the columns. Section 143 provides that the register shall make correct entries of every instrument received for record under the respective and appropriate heads, and the same shall be considered as recorded at the time so noted. *Held* that, though an index was imperfect, still, where there was nothing misleading about it, and it furnished all the information that an ordinarily prudent man would want to send him to the full record of the deed, it was sufficient.

In Equity.

*Pinney & Sanborn*, (*F. W. Downer, Jr.*, of counsel,) for complainant.
*W. F. Bailey*, (*Silverthorn, Hurley, Ryan & Jones*, of counsel,) for defendant.

BUNN, J.   This suit in equity is brought under a provision of the statute of Wisconsin, (section 3186,) the complainant being in possession of land, to bar the title of the former owner, and compel him to release. The provision is this:

"Any person having the possession and legal title to land may institute an action against any other person setting up a claim thereto, and, if the plaintiff shall be able to substantiate his title to such land, the defendant shall be adjudged to release to the plaintiff all claim thereto, and to pay the costs of such action, unless the defendant shall, by answer, disclaim all title to such land, and give a release thereof to the plaintiff, in which case he shall recover costs, unless the court shall otherwise order.   It shall be sufficient to aver in the complaint in such action the nature and extent of the plaintiff's estate in such land, describing it as accurately as may be, and that he is in possession thereof, and that the defendant makes some claim thereto, and to demand judgment that the plaintiff's claim be established against any claim of the defendant, and that he be forever barred against having or claiming any right or title to the land adverse to the plaintiff," etc.

There can be no doubt that this statute constitutes a considerable enlargement of the ordinary equitable action to quiet title to land and to remove a cloud; and it is seriously contended by the defendant that the remedy so provided cannot be available to suitors in these courts, being an innovation upon the settled rules of equity jurisdiction in such cases.   But this contention can hardly be sustained.   It is well enough

settled that where the statute of a state enlarges a remedy in equity, or creates a new one, not inconsistent with the fundamental principles of equity jurisprudence, such remedy is open to suitors in the United States as well as in the state courts. This question was decided by the United States supreme court in *Holland* v. *Challen*, 110 U. S. 15, 3 Sup. Ct. Rep. 495, under a similar statute in Nebraska. Indeed the Nebraska law was a much greater innovation than the statute in question, as it gave the action to the supposed owner whether in actual possession or not; thus, in a large degree, taking the place of an action of ejectment. Again, in *Reynolds* v. *Bank*, 112 U. S. 405, 5 Sup. Ct. Rep. 213, a similar question was before the supreme court, and this general principle recognized that, while it may be conceded that the legislature of a state cannot directly enlarge the equitable jurisdiction of the circuit courts of the United States, nevertheless an enlargement of equitable rights may be administered by the circuit courts as well as by the courts of the states. The same principle was recognized and enforced by the same court in *U. S.* v. *Wilson*, 118 U. S. 86, 6 Sup. Ct. Rep. 991, and in *Chapman* v. *Brewer*, 114 U. S. 158, 5 Sup. Ct. Rep. 799. In the last case a Michigan statute came in question of the same tenor and substance as the one under which this suit is brought.

The controversy relates to the title to a quarter section of land in Douglas county, in this state, to-wit, the S. E. ¼ of section 28, in township 49 N., of range 14 W. The complainant relies upon two tax-deeds issued to Hiram Hayes, the complainant's grantor, one dated Septembers 5, 1870, for the tax of 1866, recorded September 7, 1870, and the other issued on January 1, 1882, and recorded on January 3, 1882. The defendant relies upon the title of the original owner of the land, one James D. Ray, who conveyed it to James Bardon by release or quitclaim on March 6, 1878, who again conveyed it to the defendant on January 7, 1887, for a nominal consideration. The case turns upon the validity of these tax-deeds. If either is a valid tax-deed, it is quite evident from the lapse of time that the statute of limitations has run upon it, that the original owner is barred, and that the complainant's title is good. It is something over 30 years since the original owner, or those claiming under him, has paid any taxes on the land. On the contrary, the complainant and its grantor, Hiram Hayes, have paid the taxes since the issuing of the first tax-deed. The complainant paid Hayes for the land on June 2, 1883, $6,400, and took a warranty deed of conveyance, and has paid the taxes ever since. The evidence shows that it had expended on the land up to 1890, including the taxes of 1889, something over $12,500. James Bardon testifies that he paid Ray for his quitclaim deed $100, "and perhaps more," and conveyed to the defendant his interest without money consideration. The defendant relies upon showing that the two tax-deeds under which the complainant holds are void on their face, and therefore that the statute of limitations did not run upon them.

The principal objection made to the elder tax-deed is that the record is void from not being properly indexed, as the statute requires, and this I believe to be the principal question in the case. If that record is a

valid record, and the tax-deed a valid deed on its face, then it follows that the statute of limitations has run upon it as against the former owner and his grantees, so as to prevent any inquiry into the regularity of the proceedings on which such deed is founded.   The record itself is *prima facie* evidence of the regularity of the tax proceedings, but after the statute has run this presumption becomes conclusive.   Of course, if no tax was ever levied, or if levied by incompetent authority, which is the same thing, or if the tax has been paid, in such cases the recording of the tax-deed fair on its face does not preclude inquiry into these fundamental questions, which go to the existence of the tax itself.   In such case the statute of limitations does not apply.   But barring these questions, which, to my mind, are not to any extent for consideration in this case, the recording of a tax-deed valid on its face precludes any inquiry into the validity of the deed or the regularity of the tax proceedings after the lapse of three years, and makes the title under the tax-deed. absolute.   Such has been the settled law of Wisconsin since the ,limitation law of 1859 was enacted.   The defendant claims that the deed itself, as recorded *in extenso* on the record, is void, because it shows that a quarter section of land was assessed and sold as one tract.   But there has never been any such requirement in the statute as claimed for by defendant's counsel.   By the statute the land is to be assessed and sold in separate tracts.   One man's farm cannot be assessed and sold with that of another man's farm, nor can two distinct tracts, not adjoining, belonging to the same person, be assessed and sold in one lump or parcel.   But there is no requirement that a tract of land like a section or quarter section, all belonging to the same person, shall be assessed and sold by the smallest governmental divisions, which is that of 40 acres.   It has been the custom always in this state to assess a piece of land of the same general character, contiguous, and all belonging to the same person, in one tract, without subdivision, whether a 40 or 80, a quarter section, a half section, or a section. A quarter section of land is itself a separate parcel, just as much as a 40-acre tract, and has been so regarded and assessed from the earliest period.   It is so recognized by the statute.   As early as in 1849 the statute, in giving the form for the assessment of lands, recognizes these governmental divisions of land into sections, half sections, quarter sections, 80-acre tracts, and 40-acre tracts.   The same divisions are recognized again in the Revision of 1858, and in Taylor's Statutes of 1871.   Chapter 154, Laws 1869, (section 1048, Rev. St. 1878,) provides that no assessment of real property which has been or shall be made shall be held invalid or irregular, for the reason that several such tracts or parcels of land have been assessed and valued together as one parcel,.and not separated, when the same are contiguous and owned by the same person at the time of the assessment.   This provision, in terms, applies to assessments made previous to the passage of the act, as well as after, and similar provisions have been held valid by the supreme court.   See *Meade* v. *Gilfoyle*, 64 Wis. 18, 24 N. W. Rep. 413; *Smith* v. *Cleveland*, 17 Wis. 556; *Selsby* v. *Redlow*, 19 Wis. 17; *Ehle* v. *Brown*, 31 Wis. 405.   But there is no need for the complainant to invoke the aid of this statute in this case, as here the quarter section assessed as one tract was undoubtedly

such within the meaning of the law. The decisions in other states are quite conclusive on this subject. See *Martin* v. *Cole*, 38 Iowa, 141; *Corbin* v. *De Wolf*, 25 Iowa, 125; *Bulkley* v. *Callanan*, 32 Iowa, 461; *Weaver* v. *Grant*, 39 Iowa, 295; *Pettus* v. *Wallace*, 29 Ark. 486; Cooley, Tax'n, 403; *People* v. *Culverwell*, 44 Cal. 620; *People* v. *Morse*, 43 Cal. 534; *Spellman* v. *Curtenius*, 12 Ill. 409; *Barnes* v. *Boardman*, 149 Mass. 106, 21 N. E. Rep. 308; *Sanborn* v. *Mueller*, 38 Minn. 27, 35 N. W. Rep. 666.

There are no other objections to the deed itself as recorded that I care to consider. It seems to be fair and valid in all respects on its face.

The principal contention is in regard to the index to the main record. This, it is claimed by the defendant, is insufficient and void, and therefore that the deed was never recorded. To appreciate the significance of this contention it should be noted that a tax-deed in this state has no validity unless recorded. The law also provides that the register of deeds shall keep an index of all conveyances, and the supreme court has held, in *Lombard* v. *Culbertson*, 59 Wis. 433, 18 N. W. Rep. 399, that an instrument is not to be considered as recorded, so as to be constructive notice, and, in case of a tax-deed, that the statute of limitations does not begin to run, until the proper entries are made in the index; so that if complainant's deed has not been indexed, though properly recorded *in extenso*, it can claim nothing for it. But the facts are that the deed was indexed by the register, but originally in a rather imperfect manner, as will appear from an examination of a photographic copy of the index introduced in evidence, and hereto attached; and the difficulty with the defendant's case is that, in making this contention, it is obliged to run counter to the decisions of the supreme court of Wisconsin, and to ask this court to disregard them,—a thing which cannot well be done in a case like this, depending upon local law. The Revised Statutes of 1858 provided (chapter 13, § 142) that "every register of deeds shall keep a a general index," each page of which shall be divided into eight columns, with heads to the columns, as follows, to-wit:

| Time of reception. | Name of grantor. | Name of grantee. | Description of land. | Name of instrument. | Volume and page where recorded. | To whom delivered. | Fees received. |
|---|---|---|---|---|---|---|---|

Section 143 provides that—

"Such register shall make correct entries in said index of every instrument or writing received by him for record under the respective and appropriate heads, entering the names of the grantors in alphabetical order; and he shall, immediately upon the receipt of any such instrument or writing for record, enter in the appropriate column, and in the order of time in which it was received, the day, hour, and minute of reception, and the same shall be considered as recorded at the time so noted.".

In this case the pages of the book provided for the register seem to have been divided into eight columns, but the headings were not identical with those named in the statute, but something like this:

| Description. | Sec. | Town. | Range. | Vol. | Pages. | To whom delivered. | Fees. |
|---|---|---|---|---|---|---|---|

The lines dividing the columns are, in the original record, which was in evidence, some of them, very faint, and in the photographic copy, as will be seen, almost undiscernible with the naked eye. The register, in large part, seems to have disregarded the division into columns from the start. The particular description of subdivisions of land occupies the entire space devoted to that purpose, and runs over into the columns marked "Sec.," "Town," and "Range." In some places the number of the section, town, and range are in the appropriate columns. In other cases these are crowded towards the right-hand part of the page, to give room for the fractional descriptions. The designation of "Pages" is crowded also to the right, and comes mainly into the columns headed "To whom delivered;" so that there are but two columns that seem to be preserved in their original integrity. These are the ones headed "Vol." and "Fees," though the designation of the person to whom delivered is almost wholly within the proper column. The entry of the tax-deed in question is as follows:

"South-east ½⁴ 28 49 14.1    "    "    378. 379 H. Hayes    1.00"

The description of the quarter seems to have been begun so far towards the right as to crowd the designation of "Sec." "Town," "Range," and "Vol." each out of their respective columns towards the right side of the page. The ditto marks (  "    "  ) designate the title of the instrument as a "tax-deed," marked at the head of the column under the title "Range." The figures designating the pages are under the left-hand portion of the heading "To whom delivered." The name of the person to whom delivered is in the proper column, but crowded to the right-hand portion of the column. The designation of fees is in the proper column, and the designation of the volume is nearly in the right place, but crowded a little to the right. Taking the page as a whole, the judgment of the court is that any one who would be misled by it would be misled willfully. Though the description of the land is not as full as would be made in a deed, any one not an expert in such matters, but at all accustomed to our usual method of describing lands, would read it correctly at first glance. Though the index is imperfect, there is nothing misleading about it, and it furnishes all the information that an ordinarily prudent man would want to send him to the full record of the deed. My belief is that, with one exception, any person seeking for the truth, and having no preinclination to be misled to his own interest, would read this entry without thought or study in this way: "South-east quarter of section twenty-eight, in township forty-nine north, of range fourteen west, recorded in volume one of tax-deeds, on pages 378 & 379, delivered to H. Hayes; fees $1.00." The exception is that the designation of the range as "west" instead of "east" would be read in from the person's knowledge that range 14 west is in Douglas county, and range 14 east is not. If he has any reason for doubt in regard to the description, he has full means here for guiding him to pages 378, 379, of volume 1 of Tax-Deeds, where the deed is recorded in full, and where all doubts would be resolved.

It was never intended that the index should be as full and complete as the instrument itself. The purpose evidently is to give a brief and ready notice to all persons of the conveyance, and the place where the full record thereof may be found; and it is not competent nor allowable for a person in such circumstances to shut his eyes, and remain willfully ignorant of facts fairly within his easy reach, simply because of informalities of the kind presented by this record. This statute has received from time to time a very liberal, but to my mind just and proper, construction by the supreme court of this state, and those decisions are binding upon this court. It would be absurd to say that suitors in this court should not be governed by the same rules as suitors in the state court in regard to the sufficiency of a record under the same statute of the state. The following cases seem to me to be quite decisive of this question: *Shove* v. *Larsen*, 22 Wis. 142; *Sexton* v. *Appleyard*, 34 Wis. 235; *Pringle* v. *Dunn*, 37 Wis. 449; *Oconto Co.* v. *Jerrard*, 46 Wis. 317. In Iowa and other states the ruling has been the same. See *Jones* v. *Berkshire*, 15 Iowa, 248; *Emigrant Co.* v. *Call*, 22 Fed. Rep. 765; *Leiby* v. *Wolf*, 10 Ohio, 84; *Merrick* v. *Wallace*, 19 Ill. 486; *Doyle* v. *Teas*, 4 Scam. 250; *Burney* v. *Little*, 15 Iowa, 527. In 1875, under the authority conferred by an act of the legislature of Wisconsin, passed in 1860, (chapter 201, Laws 1860,) providing that when public records should become dilapidated it should be the duty of the board of supervisors to cause copies to be made and certified, this original index in the register's office was copied, and this copy was the one in common use from 1875 ever after, the original index being kept in the vault, but where it could be seen and examined by those wishing to do so. The defects complained of in the original index were corrected in this copy, and, if we should assume that the original index is insufficient, it seems quite evident that the record of the deed would be good from the time of the perfecting of the copy in 1875. There is no doubt under the authorities that the register, without any special authority, would have power to correct any mistake or defect in his own record. *Lombard* v. *Culbertson, supra.* So that, in any view, I do not see that the informalities complained of in the original record index have resulted, or could have resulted, in any injury or prejudice to the defendant. If the record of the first tax-deed to Hiram Hayes is valid, as I think it is, it being more than 20 years since it was recorded on September 5, 1870, that the statute of limitations has run upon it against the original owner and his grantees, so as to bar his title, seems self-evident from a reading of the statute; and the statute has received such ample and repeated interpretation at the hands of the supreme court of the state that it seems rather surprising that any contention should be made in regard to it. See chapter 138, Laws Wis. 1861. The effect of the statute is to cut off all inquiry into the title or the regularity of the proceedings on which the deed is founded, so that defects in those proceedings which might otherwise avoid the deed cannot be made available. If a tax has been levied by competent authority, and has not been paid, a valid record and the running of the statute shuts out all inquiry into the regularity

of the proceedings in other respects, and bars the former owner's rights. The statute, as applicable to a case like this, has been so often construed and so long settled that it seems quite needless to go over the ground at this late day, and I shall content myself by a brief reference to some of the cases which in my judgment furnish the rule for the one at bar: *Edgerton* v. *Bird*, 6 Wis. 527; *Falkner* v. *Dorman*, 7 Wis. 388; *Knox* v. *Cleveland*, 13 Wis. 245; *Parish* v. *Eager*, 15 Wis. 532; *Swain* v. *Comstock*, 18 Wis. 463; *Sprecher* v. *Wakeley*, 11 Wis. 432; *Hill* v. *Kricke*, Id. 442; *Dean* v. *Earley*, 15 Wis. 100; *Whitney* v. *Marshall*, 17 Wis. 174; *Gunnison* v. *Hoehne*, 18 Wis. 268; *Lawrence* v. *Kenney*, 32 Wis. 281; *Wood* v. *Meyer*, 36 Wis. 308; *Oconto Co.* v. *Jerrard*, 46 Wis. 317. See, also, *Coleman* v. *Lumber Co.*, 30 Fed. Rep. 317, where the United States circuit court for the eastern district of Wisconsin followed the same rule laid down in the foregoing cases.

There were some other questions raised on the hearing as to right of the plaintiff, having an office and doing business in Wisconsin, but being chartered under the laws of New Jersey, and having an office in that state and in New York city, to sue in the federal court, and as to the jurisdiction of the town of Superior, in Douglas county, to levy the tax, which have all been fully considered by the court, and the objections made by the defendant held insufficient. And I do not find it necessary to pass upon the validity of the second tax-deed to Hiram Hayes. The first deed being valid, and the deed in connection with the running of the statute upon it giving title to the grantee, the taking out of a second tax-deed to strengthen his title was unnecessary and of no effect, and operated as a payment of the tax on the land.

There will be a decree in favor of the complainant.